## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

|  |  |  |
|---|---|---|
| JOHN PRAIZNER, and MALIK THOMAS | : : : : | |
| Plaintiffs, | : : | CIVIL ACTION NO. 5:24-cv-01126-JMG |
| v. | : : | |
| RED & BLUE DICE CORPORATION; RED & BLUE DICE 2 CORPORATION; and AZHARUL ISLAM; Defendants. | : : : : : | |

## PLAINTIFF MALIK THOMAS'S BRIEF IN SUPPORT OF
## MOTION FOR FEES AND COSTS

## I.      PRELIMINARY STATEMENT

Plaintiff Malik Thomas is the prevailing party as to the claims brought by him in Counts I, III, and IV of the Second Amended Complaint. These claims were brought under the Fair Labor Standards Act ("FLSA"), the Pennsylvania Minimum Wage Act ("PMWA") and the Pennsylvania Wage Payment and Collection Law ("PWPCL").

Those claims were initially asserted in a Complaint filed on March 15, 2024. Defendants denied liability under all three statutes. *See* Answer to Amended Complaint at ¶ 1 ("Answering Defendants specifically deny that Answering Defendants are liable pursuant to the statutes cited.") *(*ECF Doc. 16). No settlement offer was made by Defendants on those claims until June 5, 2025. At that point, discovery was complete, the parties were about to file summary judgment motions, and trial preparation had begun. The offer of judgment served on June 5 was for $23,000.01, and provides that the offer is

exclusive of attorneys' fees.  The offer of judgment provided that "said fees and costs are to be in an amount as agreed to between counsel for the parties, or if they are unable to agree, as determined by the Court upon motion." Hardwick Verification, **Exhibit G** (ECF Doc. 48-1).

The parties have not agreed on an amount of costs and fees.

Plaintiff is entitled to an award of reasonable attorneys' fees and costs under the Fair Labor Standards Act and the Pennsylvania Minimum Wage Law. Accordingly, Plaintiff respectfully requests that this Court enter an award of fees in the amount of **$160,718.78** as set out in the attached Verification of Virginia L. Hardwick, Exhibit A.

## II.    LEGAL ARGUMENT

### A.    As the Prevailing Plaintiff under the FLSA, PMWA and PWPCL, Mr. Thomas is Entitled to Recover the Full Amount of Reasonable Attorneys' Fees and Costs.

An award of reasonable attorneys' fees is mandatory under the FLSA. The FLSA provides that "the court in such action **shall**, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and the costs of the action." 29 U.S.C. § 216(b). The Pennsylvania Minimum Wage Act likewise provides for an award of attorneys' fees and costs to a prevailing plaintiff. 43 P.S. § 333.113 ("the employer shall be required to pay the cost and such reasonable attorney's fees as may be allowed by the court"). Similarly, mandatory attorney's fees are awarded for a claim under the Pennsylvania Wage Payment Law, 43 P.S. §260.9a, which provides that "the court in any action brought under this section **shall,** in addition to any judgment awarded to the plaintiff or plaintiffs, allow costs for reasonable attorneys' fees

2

of any nature to be paid by the defendant." The award of fees under the PWPL is mandatory. *Commonwealth v. McCafferty*, 563 Pa. 146 (2000)(the word "shall" indicates that statutory construction is mandatory).

"The mere fact that the recovery is small in amount is not a circumstance justifying a reduced fee award." *Bywaters v. United States*, 670 F.3d 1221, 1231 (Fed. Cir. 2012).

**B.** **Discovery and Litigation Efforts Required to Prove the Recovery Due to Plaintiff for Failure to Pay Overtime and Obtain the Favorable Result.**

The efforts of Plaintiff's counsel uncovered substantially more unpaid overtime than that calculated by the United States Department of Labor ("DOL") in its investigation of Defendants. The DOL investigation would have provided Mr. Thomas a settlement of $6,660.76. As a result of the discovery efforts and analysis conducted by counsel for Plaintiff, Mr. Thomas received a judgment of nearly four times as much, $23,000.01.

To understand the efforts required by counsel to calculate and prove the correct amount of overtime that was owed, it is important to understand the various "buckets" in which those losses fell.

**1.** **DOL Investigation: Overtime Not Paid Between May 2022 and December 2023**

The most straightforward calculation of overtime owed was for the period between May 2022 and December 2023. The DOL investigation calculated the overtime owed in this time period and concluded that Defendants had underpaid Mr. Thomas by $6,660.76. This calculation was completed on October 2, 2024 (seven months after the filing of the complaint by Plaintiff). However, the analysis conducted by the DOL

significantly undercalculated the amount due to Mr. Thomas.  Hardwick Verification at ¶ 37, **Exhibit B.**

> **2.** <u>**DOL Investigation Did Not Include: Overtime Not Paid Between January 2024 and March 2024**</u>

When payroll records were eventually received from Defendants' accountants, see below at 9 – 11, it became evident that the Department of Labor's calculations had ignored the overtime that was not paid between January 2024 and March 2024.  It took extensive effort, including a motion to compel, to obtain those records to eventually calculate the amount of overtime that was due.

> **3.** <u>**Overtime Initially Paid Before May 2022 But Then Deducted From Plaintiff's Pay Checks**</u>

The final piece of the puzzle in determining the amount of overtime that was owed to Mr. Thomas was the understanding that overtime that had been properly paid to Mr. Thomas before May of 2022 was later retracted from his paychecks after Mr. Islam came to the (wrong) conclusion that Mr. Thomas was not owed overtime.

Although Mr. Thomas suspected that his paychecks had been wrongly reduced to require him to "pay back" overtime, this wrongdoing by Defendants was not easy to prove.  The Department of Labor missed this element of damages because it was not apparent on the face of the payroll records. Looking at the payroll records would lead one to the incorrect belief that the overtime had been paid.

In the initial deposition of Mr. Islam, he denied having any knowledge of whether overtime had been deducted from Mr. Thomas' pay. Mr. Islam was asked in his deposition whether his accountant computed how much would be docked and he said "I wouldn't know how they did it." Hardwick Verification at Islam Tr. at 118:11-15.

As a result of the motion to compel, Defendants produced about 47,000 pages of documents, most of which was junk. Hardwick Verification at ¶ 57a.  Buried within those documents was an email from Amy Keich at The Bottom Line ("TBL"), the Defendants' accountant and payroll provider, to Mr. Islam demonstrating that overtime that had initially been paid to Mr. Thomas was going to be deducted as a loan.

**4.  Proof that Defendants' Legal Violations Were Willful**

Defendants took the position that their actions with respect to payment of overtime were taken in good faith. Thus, for example, the Answer to the Second Amended Complaint filed on June 14, 2024, stated that "Answering Defendants acted, at all times, in good faith with regard to payment of wages and had good faith, reasonable grounds to believe that its actions were not in violation of the FLSA or state wage and hour laws." Answer to Second Amended Complaint, Affirmative Defense 8 (ECF Doc. 16). Defendants' Answers to Interrogatories, served on March 20, 2025, also took the position that Defendants acted in good faith, stating "Defendants ensured compliance with all applicable laws through their policies and procedures and paid employees for overtime when they worked more than 40 hours in a workweek for its companies." Hardwick Verification at ¶ 35, **Exhibit D, Interrogatory Answer 4**

It was only when Mr. Islam was deposed that Plaintiff obtained the evidence that would put to rest the argument that Defendants acted in good faith. During his deposition, counsel for Plaintiff established that Mr. Islam never checked with any lawyer about the legality of his wish to not pay overtime; that Mr. Islam ignored the advice of his accountant; and that Mr. Islam continued to not correct the failure to pay overtime even

after he was told by the Department of Labor investigator that he was breaking the law. Hardwick Verification at ¶ 54.

FLSA provides for liquidated damages (double damages) unless the Defendants can show good faith. *See, e.g.*, *Williams v. Tri-county Growers, Inc.*, 747 F.2d 121, 128-29 (3d Cir. 1984). It is plain that Defendants began this litigation with the intent of proving that there was no legal violation or – at the least – that there was a good faith defense. Proving lack of good faith to the satisfaction of the Defendants (or Defendants' counsel) was an essential in obtaining the $23,000.01 offer of judgment, and the depositions of Mr. Islam helped to accomplish this. Hardwick Verification at ¶ 54.

### 5. <u>Computation of Overtime Owed</u>

Plaintiff's counsel attempted to obtain discovery that would have made the calculation of overtime owed more efficient. Thus, in interrogatories, Plaintiff sought "any and all calculations performed by Defendants . . . regarding the amount of overtime pay that would be owed to Plaintiff Malik Thomas if the hours worked for Red & Blue Dice Corporation and Red & Blue Dice 2 Corporation were combined for each workweek during his employment." Defendants objected to this request and provided no calculations, saying, "see payroll records for Plaintiff . . . ." **Hardwick Verification at ¶ 58, Exhibit D, Defendants' answers to Interrogatories, Interrogatory 15**.

Defendants' refusal to produce any calculations of hours and overtime required counsel for Plaintiff to spend extensive time reviewing the payroll records from each of the two companies and lining them up – along with the records of Mr. Thomas's work hours – to determine calculate the amount by which Mr. Thomas's overtime was shorted. (Counsel for Plaintiff did explore the possibility of seeking an expert to calculate the

overtime owed, but concluded that use of an expert to make these calculations would be even more expensive and time-consuming. This inquiry is reflected in a telephone call on January 13, 2025.) Among the time entries for this analysis are the following: December 20, 2024 (1.6 hours); December 30, 2024 (2.0 hours); January 1, 2025 (1.5 hours); March 21, 2025 (2.2 hours, billed at 50% for successful claim); March 22, 2025 (2.7 hours, billed at 50% for successful claim); March 24, 2025 (2.2 hours paralegal time, billed at 50% for successful claim); March 25, 2025 (3 hours paralegal time, billed at 50% for successful claim); March 26, 2025 (2 hours paralegal time, billed at 50% for successful claim); April 6, 2025 (2.5 hours, billed at 30% for successful claim); April 8, 2025 (1.5 hours, billed at 30% for successful claim); April 8, 2025 (2.0 hours paralegal time); April 11, 2025 (2.4 hours); April 24, 2025 (3.5 hours), Hardwick Verification at ¶ 59, Exhibit A at _006 – 007; _014 – 016.

C. **The Fees Sought by Plaintiff are Reasonable: Calculation of the Loadstar**

Attorneys' fees under the FLSA are calculated using the "loadstar" method, under which the district court is to calculate the hours reasonably expended by the reasonable hourly rate. *Cheung v. United States*, 170 Fed. C. 622 (Ct. Fed. Cl. February 27, 2024). There is a strong presumption that the loadstar figure represents a reasonable attorneys fee, but the district court has the discretion to adjust that figure upwards or downwards. "However, adjustments to the lodestar figure 'are proper only in certain 'rare' and 'exceptional' cases, supported by both 'specific evidence on the record and detailed findings by the lower courts." *Cheung*, 170 Fed. Cl. at 659, *quoting Bywaters v. United States*, 670 F.3d 1221, 1228-29 (Fed. Cir. 2012) and cases cited therein. *See also,*

*Perkins v. Shinseki*, Civil Action No. 08-1244, 2013 WL 497158 at *5 (E.D. Pa. 2013), quoting *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983)( "The first step to determine the reasonableness of an attorney's fee request is to calculate the 'loadstar' – the 'number of hours reasonably expended on the litigation multiplied by the reasonable hourly rate.'"). The loadstar is a presumptively reasonable fee and should be adjusted only in rare circumstances. *Migliori v. Lehigh Cnty Bd. Of Elections,* 2025 U.S. Dist. Ct. LEXIS 94955, at *9, Civ. Action No. 22-cv-397 (E.D. Pa. 2025); *Millea v. Metro-North Railroad Co.*, 658 F.3d 154, 168-69 (2d Cir. 2011).

**1.     Plaintiff's Time Records and Adjustments Made for this Motion.**

In support of this motion, Plaintiff provides extensive contemporaneous time records.  Those records are attached to the Hardwick Verification as Exhibit A.

The time records were recorded in three separate "matters." Before Mr. Thomas's case was consolidated with Mr. Praizner's case, time for Mr. Thomas's case was billed under Mr. Thomas's name. Those time entries are listed in **Exhibit A, _002 – 011**. Hardwick Verification at ¶ 18.  After Mr. Thomas's case was consolidated with Mr. Praizner's case, all time entries for the consolidated matter were billed under Mr. Praizner's name. Portions of those time entries that relate to Mr. Thomas are listed in **Exhibit A, _013-020. Hardwick Verification at ¶ 19**.  A third matter was created to track fees for the preparation of this motion. **Exhibit A, 022-23.** The total fees from all three "matters" (all of which relate to Mr. Thomas's wage claims) are shown on page _001 of Exhibit A.  **Hardwick Verification at ¶ 20**.

Counsel for Plaintiff made a detailed and good faith review of the time billed to delete items that were not needed for the successful wage and hour claims.  As a result,

many entries were deleted altogether. For example, all billing entries that relate solely to Mr. Praizner's claims or to Mr. Thomas's unsuccessful claims have been deleted.

Some time entries are related to both the successful and unsuccessful claims. For these entries, the fee requested has been reduced by a percentage that relates to a reasonable estimate of how much time for each task was necessary to pursue the successful claim.

In order to reduce the time entries to make a request only for the successful claims, counsel for Plaintiff has added two additional columns to the usual billing template. One column, labeled "Percentage," indicates whether counsel is seeking 100% of a given billing entry, NOTHING for a given billing entry (listed as "NC"), or a percentage of a given billing entry. The last column on each page multiplies the total value for each entry by the percentage that is sought.

Accordingly, all entries that related solely to the claims of Mr. Praizner were deleted or listed as "NO CHARGE."[1]  See, for example, **Hardwick Verification, Exhibit A at _013** (numerous Praizner-related entries are "no charged."

Similarly, all entries on behalf of Mr. Thomas that related solely to the claims of Mr. Thomas under Counts II, V, and VI of the Third Amended Complaint were no-charged. For example, entries between September 1, 2024 and September 13, 2024 related to the drafting of the EEOC charge of discrimination are listed as "NO CHARGE." **Hardwick Verification, Exhibit A at _004-005**. Similarly, no time for the

---

[1] To avoid providing the Court with unnecessary and irrelevant time entries, those pages of the billing records that related only to Mr. Praizner before the cases were consolidated have not been attached to the Hardwick Verification.

depositions of Christopher Burns or Louis Seltzer has been charged, since those depositions primarily related to unsuccessful claims. **Hardwick Verification at ¶ 27**.

All time entries after June 5, 2025, the date on which the Offer of Judgment was served on Plaintiff, have also been deleted or listed as "NO CHARGE."

For time entries that relate to both successful and unsuccessful claims, Plaintiff has made a good faith effort to reduce those entries to an amount that is fairly attributable to the successful claims, assigning a percentage to each entry. Hardwick Verification at ¶¶ 26- 31.

### 2.   Hours Expended were Reasonable

The district court has substantial discretion in determining what constitutes reasonable hours. *Id.; Lanni v. New Jersey,* 259 F.3d 146, 149 (3d Cir. 2001).

The efforts that resulted in the offer of judgment are set forth in greater length in the Hardwick Verification and are amply documented in the attached time records. This brief will focus on those aspects of attorney time that made proof of the wage payment claim more time-consuming and expensive than it might otherwise have been.

### a.   Discovery Challenges in Obtaining Payroll Records

Counsel for Plaintiff served a request for production of documents on October 9, 2024, seeking all payroll and time records as to Mr. Thomas. Hardwick Verification at ¶ 32.  These records are obviously necessary to evaluate the damages from his claim relating to failure to pay overtime.

Counsel for Plaintiff also served a subpoena on the third-party accountant for Defendants, The Bottom Line, seeking all payroll and time records as to Mr. Thomas. Hardwick Verification at ¶ 33. That subpoena was served on October 25, 2024.

10

The Bottom Line produced some responsive documents in December 2024. Unfortunately, those documents were incomplete and significantly understated the amount of overtime that was due to Mr. Thomas.

Combing through the documents to understand what was missing in the production took more than 11 hours, which were billed between December 20, 2023 and January 2, 2024. Hardwick Verification at ¶ 46. Additional time was spent in communications with counsel for Defendants and counsel for TBL. Hardwick Verification at ¶ 50.

Eventually, counsel for Plaintiff was required to make a motion to compel production of the full payroll records. Hardwick Verification at ¶ 51.

In addition to the efforts to obtain payroll records directly from Defendants and from TBL, counsel for Plaintiff sought to obtain the payroll records and analysis of those records by serving a Freedom of Information Act ("FOIA") request on the United States Department of Labor. Filing that request and the subsequent follow up was billed on January 22, 2024 (.8 hours); March 31, 2025 (.4 hours); April 10, 2025 (.4 hours); Hardwick Verification at ¶ 63, Exhibit A at _008; _014-015. Months later, counsel for Plaintiff was advised by a DOL employee that response to the FOIA request had been significantly delayed because of reductions in force in the federal government. The response to the request was eventually received, but not until after the Offer of Judgment was served. Nevertheless, counsel's reasonable efforts to obtain evidence through a FOIA request should be compensated, especially given the delays in production by Defendants and their accountants. Hardwick Verification at ¶ 63.

11

When the actions of an employer contribute to the costs of bringing a successful FLSA claim, the court should make every effort to ensure that the successful plaintiff is fully compensated for fighting these unnecessarily expensive battles. Defendants should not be permitted to take actions that caused Mr. Thomas to incur additional legal costs, and then complain that the fees are too high.

### 2. The Hourly Rate Sought by Counsel Is Reasonable

The Court must set a reasonable rate for the attorneys' fees sought by Plaintiff. In *Moorehead v. Sch. District of Allentown*, 2025 U.S. Dist. LEXIS 107548, 2025 WL 161844 (E.D. Pa. June 6, 2025), the Court detailed the factors that should be considered in determining the reasonable hourly rate. *Id.* at **14 – 17. These factors include (1) the prevailing market rates in the relevant community; (2) the experience and skills of the counsel and (3) counsel's usual billing rate.

Plaintiff's counsel seeks an hourly rate of $700 per hour for the work of Virginia Hardwick, which is reasonable and customary for a very experienced attorney in eastern Pennsylvania.

Ms. Hardwick's usual hourly billing rate is $700 per hour. Counsel has submitted a redacted fee agreement with an hourly client that was executed on April 2, 2025, and has attested that the client lives and/or works in the Lehigh Valley and that the client did pay for Ms. Hardwick's services at the rate of $700 per hour. Hardwick Verification at ¶ 77 and **Exhibit E.**

The reasonableness of the requested hourly rate is confirmed by the rates set forth by the Community Legal Services of Philadelphia ("CLS"). Numerous courts in this district have relied on the CLS fee schedule as a factor to determine the reasonableness of

the fee requested. The Third Circuit adopted the then-current CLS rate schedule in 2001, and numerous courts have adopted it since that time. *Maldonado v. Houstoun*, 256 F.3d 181, 187 (3d Cir. 2001); *see also, Moorehead*, *supra* at **14-15. ("This schedule serves as a baseline of what rates are reasonable in the Eastern District of Pennsylvania." *Id.* at *15); *Ray v. ATT Mobility Servs., LLC*, 2022 U.S. Dist. LEXIS 73948 (E.D. Pa. April 22, 2022)(applying CLS fee schedule and awarding fees at rate of $700 per hour to three experienced attorneys). The CLS fee schedule may also be applied to a matter in the Lehigh Valley, especially since counsel for Defendant is located in Philadelphia and counsel for Plaintiff is located in Philadelphia suburbs. *See also, Migliori v. Lehigh Cnty Bd of Elections*, 2025 U.S. Dist. Ct. LEXIS 94955, at *38 and n.15, Civ. Action No. 22-cv-397 (E.D. Pa. 2025)(finding that "the CLS fee schedule reflects a reasonable hourly rate for plaintiff's side civil rights attorneys in Allentown," and recommending rates of $725 per hour for attorneys with more than 25 years' experience); *Rayna P. v. Campus*

The $700 per hour sought by counsel for Plaintiff is *less* than the amount that is suggested by the CLS fee schedule. **CLS Fee Schedule, Hardwick Verification at ¶ 78, Exhibit F**. Ms. Hardwick has been practicing law (or engaged in related pursuits, including law school teaching) since her graduation from law school in 1984 (40 years ago) (Hardwick Verification at ¶¶ 80 - 97). She has extensive litigation experience and extensive experience in the field of employment law. Hardwick Verification at ¶¶ 80 - 97. The CLS fee schedule provides for an hourly rate for attorneys with more than 25 years' experience of $735 - $850. Hardwick Verification, ¶ 78, Exhibit F. The requested rate of $700 is therefore conservative.

The reasonableness of the contingency hourly rate of $700/hour for Virginia Hardwick is further attested to in the attached Verifications of Michael Homans and Scott Pollins, both of whom are well regarded employment attorneys who have personal experience working with Ms. Hardwick. (Homans Verification at ¶¶ 4 - 9; Pollins Verification at ¶¶ 6 – 11; 17)

The time for paralegal Celine Husson is billed at $140 per hour. Ms. Husson has been a paralegal for six years, and $140 per hour is the usual hourly rate billed to Hardwick Benfer, LLC clients for her work. Hardwick Verification at ¶¶ 96 - 97.  The rate sought for her time is very conservative compared to market rates. The CLS fee schedule provides that the prevailing market rate for a paralegal with 1 – 10 years' experience is $190 - $240.

**C.** **There Should Be No Reduction in the Loadstar**

**1.** **Counsel for Plaintiff Has Already Cut the Fees Requested to Account for Claims on Which Plaintiff Did Not Succeed**

As detailed above, Plaintiff has extensively cut the recorded time to account for those entries that relate to the unsuccessful claims. No further cuts are warranted.

Plaintiff's recovery on the offer of judgment for the wage payment claim was completely successful, with full payment for all wages due, as well as liquidated damages. Notably, Plaintiff received nearly four times what he would have received pursuant to the Department of Labor investigation.

Another measure of success is the "private attorney general" effect of plaintiff's claim.  The litigation of Mr. Thomas's wage payment claims resulted in a change in the policies of Defendants, to the benefit of many other employees.

## 2. A Fee Award in Excess of the Verdict is Appropriate

It would be an error to reduce plaintiff's fees because the fees requested are greater than the judgment for the plaintiff. The courts of the Eastern District of Pennsylvania have frequently awarded attorneys' fees far in excess of the amount of the plaintiff's judgment. *See, e.g., Moorehead v. School District for the City of Allentown*, 2025 U. S. Dist. LEXIS 107548, 2025 WL 1618144 (E.D. Pa. June 6, 2025)(award of attorneys' fees and costs of $972,597.48 after verdict of $125,500);

First, the Defendants never made an offer of settlement (other than the payment of $6,660.76 ordered by the Department of Labor) until the service on the offer of judgment. Hardwick Verification at ¶ 39. Plaintiff had no choice but to continue to take steps to prove his claim. Settlement negotiations may be considered in evaluating level of success, *Lohman v. Duryea Borough*, 574 F.3d 163, 169 (3d Cir. 2009). Defendants' failure to make a settlement offer early in the case should be considered by the Court in determining the reasonableness of Plaintiff's legal fees.

In *Griffin v. Leaseway Deliveries*, 1992 U.S. Dist. LEXIS 20203 (E.D. Pa. December 31, 1992), the court declined to reduce the loadstar in a FLSA case based on limited success, even though the plaintiff recovered only 12.5 percent of the amount initially sought. The court emphasized an important public policy consideration in fee awards for FLSA cases: "If fee awards were limited to a percentage of damages in FLSA cases, employers effectively could withhold compensation due which was less than the amount generally required to successfully sue for it. This would undermine the important public interest in ensuring fair compensation and decent labor conditions which underlies the FLSA." *Id.* at *15.

The Second Circuit provided a cogent explanation for providing fees that are great in proportion to the monetary award in *Millea v. Metro-North Railroad Co.*, 658 F.3d 154, 169 (2d Cir. 2011). The court in *Millea* held that the district court abused its discretion by calculating attorneys' fees in an FMLA case as a proportion of the monetary recovery.

The Second Circuit in *Millea* held that the loadstar calculation creates a "presumptively reasonable" fee. *Id*. at 166. In *Millea*, the award to the plaintiff was only $612.50, but the court held that this was not "de minimis." *Id*. at 168. "It was not a derisory or contemptuous rejection by the jury." *Id*. "FMLA claims are often small-ticket items, and small damages awards should be expected without raising the inference that the victory was technical or de minimis. If an expense of time is required to obtain an award that is not available by voluntary compliance or offer of settlement, the expense advances the purposes of the statute. Absent a purely technical victory in an otherwise frivolous suit, litigation outcomes are only relevant to fee award calculations when they are a direct result of the quality of the attorney's performance." *Id.*

The court in *Millea* explained why it is error to limit attorneys' fees to a proportion of the damages awarded:

> [C]alculating attorneys' fees as a proportion of damages runs directly contrary to the purpose of fee-shifting statutes: assuring that civil rights claims of modest cash value can attract competent counsel. **The whole purpose of fee-shifting statutes is to generate attorney's fees that are disproportionate to the plaintiff's recovery.** Thus, the district court abused its discretion when it ignored the loadstar and calculated the attorney's fees as a proportion of the damages awarded.

*Id.* at 169 (emphasis added).

These principles have been frequently employed by courts in the Eastern District of Pennsylvania to award fees in excess of the judgment. *See, e.g., Perkins v. Shinseki*, 2013 U.S. Dist. LEXIS 17833, 2013 WL 497158 (E.D. Pa. February 11, 2013), *aff'd* 2014 U.S. App. LEXIS 1418 (3d Cir. Jan. 24, 2014)(court awarded attorneys' fees of $244,565 and costs of $22,492 in a case in which the judgment for damages to plaintiff was only $16,853); *McGuffey v. Brink's, Inc.*, 598 F. Supp. 2d 659 (E.D. Pa. 2009)(district court approved an award of attorneys' fees and costs totaling over $417,000 in a matter which generated an award to the plaintiff of $170,000);

Awarding a fair fee to the plaintiff's counsel is important to give "some incentive for competent counsel to undertake these types of cases." As the court in *Perkins* explained:

> If a court is too parsimonious in awarding fees, even if a plaintiff prevails on only one of several claims, the court has "cheapened" legal representation. When an individual with colorable claims, which the Court believes is an accurate characterization of Plaintiff's claims, desires to sue as allowed by Congress, <u>being fair to the plaintiff regarding his counsel fees is an essential part of enforcement of our civil rights laws</u>, including the laws against employment discrimination.

*Id.* at \*34 (emphasis added).

Plaintiff has already made cuts in the requested fees to account for those claims on which Plaintiff was not successful. The remainder of Plaintiff's requested loadstar fees should therefore be granted in full.

### D.     Attorneys' Fees for the Making of this Motion

Plaintiff attempted to reach a settlement with Defendants concerning this application for attorneys' fees and costs but no offer at all (much less an acceptable offer) was forthcoming. Hardwick Verification at ¶¶ 71 – 73.

Plaintiff's counsel therefore had no choice but to bring this motion to the Court.

Plaintiffs are entitled to an award of attorneys' fees for time spent litigating a fee application. *Planned Parenthood of Cent. N.J. v. Attorney General of State of N.J.*, 297 F.3d 253, 268 (3d Cir. 2002); *Souryavong v. Lackawanna Cnty*, 159 F. Supp.3d 514, 538-39 (M.D. Pa. 2016)(awarding attorneys' fees for litigation of fee application in a FLSA matter).

The time expended (so far) in preparing this motion is set forth in the Hardwick Verification at ¶¶ 71 – 74, Exhibit A at 022-23. If there is opposition to this motion, Plaintiff respectfully requests the opportunity to update the amount sought to account for attorney time required in the response to the opposition.

### E. Total Attorneys' Fees and Costs Sought

Plaintiff has made substantial cuts in the fees sought. The submitted fees are reasonable and should be awarded in full. In addition, the out-of-pocket costs that have been incurred by Claimant for the litigation should be awarded. Claimant therefore seeks an award of fees and costs in the amount of $160,718.78 as set forth in the Hardwick Verification, Exhibit A, as well as any additional amounts needed to continue to litigate the matter of attorneys' and costs.

### III. CONCLUSION

For the foregoing reasons plaintiff respectfully requests an award of $160,718.78 for total fees and costs.

Plaintiff has endeavored to anticipate the objections of defendants in this petition for attorneys' fees and costs.   However, plaintiff respectfully requests the opportunity to respond to any objections raised by defendants and to amend the fee petition to include fees for any needed reply briefing.

Respectfully submitted,

**HARDWICK BENFER, LLC**
Attorneys for Plaintiff, Malik Thomas


By:  */s/ Virginia L. Hardwick, Esq.*
Virginia L. Hardwick, Esq.


Dated:  September 18, 2025